~~Jason M. Drangel (JD 7204)~~
~~jdrangel@ipcounselors.com~~
~~Ashly E. Sands (AS 7715)~~
~~asands@ipcounselors.com~~
~~Danielle S. Futterman (DY 4228)~~
~~dfutterman@ipcounselors.com~~
~~Gabriela N. Nastasi~~
~~gnastasi@ipcounselors.com~~
~~Grace A. Rawlins~~
~~grawlins@ipcounselors.com~~
~~EPSTEIN DRANGEL LLP~~
~~60 East 42nd Street, Suite 1250~~
~~New York, NY 10165~~
~~Telephone:    (212) 292-5390~~
~~Facsimile:    (212) 292-5391~~
~~*Attorneys for Plaintiff*~~
~~*King Spider LLC*~~

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KING SPIDER LLC,<br><br>*Plaintiff*<br><br>v.<br><br>FOSHANSHIBINGJIEHAOYI, HUZHONGMINGZZ, KUNMINGWUHUAYUANYINGGE, MENGJUMAOYI, MIAOPOKEJI, SHANM, WEDSSSAGGY and ZHANGMUMAOYI,<br><br>*Defendants* | **24-cv-5673 (JMF)**<br><br>**~~[PROPOSED]~~<br>PRELIMINARY<br>INJUNCTION ORDER** |

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or King Spider** | King Spider LLC |
| **Defendants** | FoShanShiBingJieHaoYi, huzhongmingzz, KunMingWuHuaYuanYingGe, mengjumaoyi, Miaopokeji, shanm, WEDSSSAGGY and zhangmumaoyi |
| **Walmart Marketplace** | Walmart.com Marketplace, a Bentonville, Arkansas-based, online marketplace and e-commerce platform owned by Walmart Stores, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Rucker Dec.** | Declaration of CB Rucker in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Sp5der Products** | A young, successful high-end lifestyle streetwear line specializing in men's and women's apparel, accessories, bags and other ready-made goods |
| **Sp5der Registrations** | U.S. Trademark Registration Nos.: 6,512,199 for "SP5DER" for a variety of goods in Class 25; 6,681,320 for " sp5der " for a variety of goods in Class 25; 7,049,772 for " SP5DER " for a variety of goods in Class 25; 7,031,211 for " 555 555 " for a variety of goods in Class 25; 6,688,472 for " p*nk! " for a variety of goods in Class 25; 7,151,224 for "SP5WOM" for a variety of goods in Class 25; |

| | |
|---|---|
| | 7,270,084 for "**SP5WOM**" for a variety of goods in Class 25; 7,367,336 for "SP5 WORLDWIDE" for a variety of goods in Class 25; and 7,166,293 for "555 555" for a variety of goods in Class 25 |
| **Sp5der Applications** | U.S. Application Nos.: 97/141,401 for "555 555" for a variety of goods in Classes 9, 25 and 41; 97/141,377 for "SP5DER" for a variety of goods in Classes 9, 35 and 41; and 97/141,407 for "**555 555**" for a variety of goods in Classes 9 and 41 |
| **Sp5der Marks** | The marks covered by the Sp5der Registrations and Sp5der Applications |
| **Counterfeit Products** | Products bearing or used in connection with the Sp5der Marks, and/or products in packaging and/or containing labels bearing the Sp5der Marks, and/or bearing or used in connection with marks that are confusingly similar to the Sp5der Marks and/or products that are identical or confusingly similar to the Sp5der Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Walmart Marketplace, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and Airwallex (Hong Kong) Limited ("Airwallex") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Walmart Marketplace, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all |

ii

|  | persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |
|--|--|

WHERAS, Plaintiff having moved *ex parte* on July 26, 2024 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on August 2, 2024 ("TRO") which ordered Defendants to appear on August 28, 2024 at 3:45 p.m. to show cause why a preliminary injunction should not issue ("Show Cause Hearing");

WHEREAS, August 14, 2024 pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO and all papers filed in support of the Application on each and every Defendant;

WHEREAS, on August 28, 2024 at 3:45 p.m., Plaintiff appeared at the Show Cause Hearing, however, none of the Defendants appeared.

## **ORDER**

1. The injunctive relief previously granted in the TRO shall remain in place through the pendency of this action, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act.
    a) Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:
        i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products or any other products bearing the Sp5der Marks and/or

marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Sp5der Marks;

ii. directly or indirectly infringing in any manner Plaintiff's Sp5der Marks;

iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Sp5der Marks, to identify any goods or services not authorized by Plaintiff;

iv. using Plaintiff's Sp5der Marks and/or any other marks that are confusingly similar to the Sp5der Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

vi. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants'

        Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

  vii. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

  viii. knowingly instructing any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii) above, 1(b)(i) through 1(c)(i) below.

b) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

  i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court.

c) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers

3

who satisfy those requirements are restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i. instructing, aiding or abetting Defendants and/or any person or business entity to engage in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii) above.

2. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

    a) within five (5) days of receipt of notice of this Order, any newly discovered Financial Institutions who are served with this Order shall locate and attach Defendants' Financial Accounts, shall provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts, contact information for Defendants (including mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts.

3. As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

    a) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days

of service to Plaintiff's counsel.

b) Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

c) Within fourteen (14) days after receiving notice of this Order, all Financial Institutions who receive service of this Order shall provide Plaintiff's counsel with all documents and records in their possession, custody or control, relating to any and all of Defendants' Financial Accounts, User Accounts and Merchant Storefronts, including, but not limited to, documents and records relating to:

   i. account numbers;
   ii. current account balances;
   iii. any and all identifying information for Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;
   iv. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;
   v. any and all deposits and withdrawal during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

  vi. any and all wire transfers into each and every of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number;

d) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers shall provide to Plaintiff's counsel all documents and records in its possession, custody or control relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

  i. any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C) of the TRO;

  ii. the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C) of the TRO;

  iii. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions

6

    associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

   iv. Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of counterfeit Products, or any other products bearing the Sp5der Marks and/or marks that are confusingly similar to, identical to and/or constitute an infringement of the Sp5der Marks.

4. As sufficient cause has been shown, and pursuant to FRCP 4(f) and Articles 1 and 15 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), service may be made on, and shall be deemed effective as to all Defendants – for purposes of the TRO and this preliminary injunction order only – if it is completed by the following means:

 a) delivery of: (i) a PDF copy of this Order, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com or via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download a PDF copy of this Order, to Defendants' e-mail addresses as identified by Walmart Marketplace pursuant to Paragraph V(C) of the TRO or may otherwise be determined.

5. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed by the following means:

 a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal will be able to download a PDF copy of this Order via electronic mail to PayPal Legal

      Specialist at EEOMALegalSpecialist@paypal.com;

  b) delivery of: (i) a PDF copy of this Order, or (iii) a link to a secure website where Walmart Marketplace will be able to download a PDF copy of this Order via electronic mail to trolegalcomms@walmartlegal.com;

  c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to thirdpartyrequests@payoneer.com;

  d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to legal-int@pingpongx.com; and

  e) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Airwallex will be able to download a PDF copy of this Order via electronic mail to kking@maglaw.com.

6. Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them or anyone of them in violation of this Order may be considered and prosecuted as in contempt of this Court.

7. The $25,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

8. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

9. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

10. Plaintiff shall submit a status update and proposed next steps letter by no later than ~~October 28, 2024~~ November 1, 2024 and every ~~sixty days~~ two months thereafter until the Court orders otherwise.

**SO ORDERED.**

SIGNED this __28th__ day of __August__, 2024, at __4:00__ _p.m.
New York, New York

                                                    _____
                                                    HON. JESSE M. FURMAN
                                                    UNITED STATES DISTRICT JUDGE

9